1 LAURI S. THOMPSON, ESQ.
Nevada Bar No. 6846
2 thompsonl@gtlaw.com
LARAINE BURRELL, ESQ.
3 Nevada Bar No. 8771
burrell@gtlaw.com
4 SHAUNA L. WELSH, ESQ.
Nevada Bar No. 11320
5 welshs@gtlaw.com
GREENBERG TRAURIG, LLP
6 3773 Howard Hughes Parkway
Suite 400 North
7 Las Vegas, Nevada 89169
Telephone: (702) 792-3773
8 Facsimile: (702) 792-9002
*Counsel for Plaintiff*

9

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| HAKKASAN LV, LLC, a Nevada limited liability company, HAKKASAN LIMITED, a foreign private limited company, <br><br> Plaintiffs, <br><br> v. <br><br> VIP, UNLTD, LLC, a Nevada limited liability company, ANDREW ROCKWELL, an individual, <br><br> Defendants. | Case No.: 2:13-cv-1999-JCM-NJK <br><br> ***EX PARTE* PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs, Hakkasan LV, LLC, a Nevada limited liability company and Hakkasan Limited, a foreign private limited company ("Plaintiffs"), by and through their counsel, the law firm of Greenberg Traurig, LLP, hereby move the Court for (1) an *ex parte* temporary restraining order requiring Defendants VIP, UNLTD, LLC ("VIP") and Andrew Rockwell ("Rockwell") (collectively "Defendants") to immediately cease and desist all use of Plaintiffs' names, trademarks and promotional materials on the website <www.hakkasannightclubvegas.com> the "Infringing Domain Name")  on Facebook, and elsewhere; and (2) a preliminary injunction requiring Defendants to

LV 420085325v1

immediately cease and desist all use of Plaintiffs' names, trademarks and promotional materials on the website <www.hakkasannightclubvegas.com>, on Facebook, and elsewhere; and (3) for an injunction requiring Defendants to immediately cease claiming an affiliation with the Plaintiffs' Hakkasan restaurants and nightclubs.

This Motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum of Points and Authorities, the Declaration of James Brucculeri ("Brucculeri Decl."), the  Declaration of Lauri S. Thompson ("Thompson Decl."), the Declaration of Laraine M. I. Burrell, Esq. ("Burrell Decl."), the supporting exhibits attached hereto, and the papers and pleadings on file herein and any oral argument that this Court may allow.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.   INTRODUCTION AND STATEMENT OF GOOD CAUSE IN COMPLIANCE WITH LR 7-5

This Motion is brought under Plaintiffs' claims for violation of the Anti-cybersquatting Consumer Protection Act (the "ACPA"), trademark infringement, and unfair competition under the Lanham Act (15 U.S.C. §§ 1114 and 1125) and trademark infringement under Nevada law (collectively, the "Relevant Claims").  Plaintiffs' Motion arises from Defendants' unauthorized use of the Plaintiffs' marks and Defendants' registration of the Infringing Domain Name.

Defendants registered and used in bad faith the Infringing Domain Name <www.hakkasannightclubvegas.com> .  Defendants are likely to deceive the public into believing that Defendants are the Plaintiffs, when they are not.  Defendants are diluting Plaintiffs' marks and are wrongfully benefiting and profiting from Plaintiffs' goodwill.  Therefore, Plaintiffs seek a temporary restraining order and a preliminary injunction requiring the transfer of the Infringing Domain Name to Plaintiffs and enjoining Defendants from continuing their infringement of Plaintiffs' marks during the pendency of this action.

Plaintiffs are seeking a temporary restraining order *ex parte* to avoid irreparable injury that will result if Defendants receive advance notice of Plaintiffs' request.  An *ex parte* order will prevent Defendants from transferring the Infringing Domain Name to other registrars and/or other registrants

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

during the pendency of this action.  As soon as Defendants receive notice of this action, they could easily and nearly instantaneously transfer the registration of the Infringing Domain Name from the current registrar to any number of other registrars located outside the United States as well as to other registrants unwilling to abide by this Court's orders.[1]  If this were to occur, Plaintiffs would be deprived of the ability to recover registration of the Infringing Domain Name and the ability to enforce their intellectual property rights.  Accordingly, this Court should enter a temporary restraining order directing the Defendants and the Registrar to transfer the Infringing Domain Name to Plaintiffs during the pendency of this action, thereby preventing any further migration of the Infringing Domain Name and the need to file additional lawsuits to chase the Infringing Domain Name in an attempt to recover it.

## II.   STATEMENT OF FACTS

### A.   Facts Regarding Plaintiff.

Plaintiff Hakkasan LV, LLC ("Hakkasan LV") is an indirect wholly owned subsidiary of Hakkasan Limited ("Hakkasan Parent").  See Brucculeri Decl., attached hereto as **Exhibit 1**, at ¶ 3. Plaintiff owns and operates Hakkasan, a premier nightclub and restaurant venue located  inside the MGM Grand Hotel and Casino on the Las Vegas strip ("Hakkasan Las Vegas").  See id. at ¶ 4. Hakkasan Parent also owns and/or operates, either directly or through its subsidiary companies, several other Hakkasan restaurants around the globe, including Dubai, London, New York, San Francisco and Miami.  See id. at ¶ 5.

Hakkasan Las Vegas encompasses approximately 80,000 square feet of restaurant, nightclub and lounge space.  See id. at ¶ 6.  This venue features a modern Cantonese restaurant headed up by a Michelin-starred chef, a 55,000 square foot nightclub featuring elaborate cocktail lounges and a garden pavilion with a two-story waterfall.  See id.  In addition, Plaintiff Hakkasan LV has booked some of the most famous DJ's in the world to perform at Hakkasan Las Vegas, including Tiësto,

---

[1]  While registrars who are accredited by the Internet Corporation of Assigned Names and Numbers ("ICANN") are required to subscribe to ICANN's Uniform Dispute Resolution Policy ("UDRP"), which requires the registrar to obey and follow the order of a court of "competent jurisdiction" over the registrant to transfer a domain name, as to those registrars that are not within the jurisdiction of the court or that do not subscribe to the ICANN rules, neither the Lanham Act nor the courts will have any power over them.  See UDRP Rule 4, at www.icann.org/udrp/udrp.htm.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Calvin Harris, and Steve Aoki.  See id.

Hakkasan Parent owns the mark HAKKASAN in connection with, among other things, restaurant, bar and nightclub services.  See id. at ¶ 7.  In particular, Hakkasan Parent owns a federal trademark registration (U.S. Reg. No. 3,789,248) for HAKKASAN for bar and restaurant services and a pending trademark application (U.S. Ser. No. 85/928057) for nightclubs, nightclub services in the nature of reservation and booking services for the purpose of arranging for admission to nightclubs, and related services (the "HAKKASAN Marks").  See id. at ¶ 7.  Plaintiff Hakkasan LV is a licensee of the HAKKASAN Marks in connection with its ownership and operation of Hakkasan Las Vegas.  See id. at ¶ 8.  Neither Hakkasan Parent's federal trademark registration nor its pending trademark application has been abandoned, canceled or revoked.  See id. at ¶ 9.

Since opening the original HAKKASAN in 2001 and its first US location in 2009, Hakkasan Parent and its predecessors-in-interest, have used the HAKKASAN Marks in connection with advertising and promoting its restaurants in the United States and around the world.  As a licensee of the HAKKASAN Marks, Plaintiff Hakkasan LV has used the HAKKASAN Marks to promote its Las Vegas restaurant and nightclub services in the United States and around the world since 2012. See id. at ¶ 10.

The HAKKASAN name and mark is an internationally recognized and respected name in the restaurant and nightlife industry.  See id. at ¶ 11.  Plaintiff Hakkasan LV has spent millions of dollars to advertise and promote the HAKKASAN Marks in print, broadcast media and on the Internet through its website, accessible throughout the United States and around the world at <hakkasanlv.com>.  See id. at ¶ 12.  A true and correct copy of the home page for Plaintiff Hakkasan LV's website is attached hereto as **Exhibit 2**.  In addition, Plaintiff Hakkasan LV has made extensive use of the HAKKASAN Marks on, among other things, signage, billboards and promotional materials.  See Brucculeri Decl. at ¶ 13.

Based on its federal trademark registration, pending federal trademark application and extensive use, Hakkasan Parent owns the exclusive right to use its HAKKASAN Marks in connection with restaurant, bar, nightclub and related services.  See id. at ¶ 14.  As a licensee of the HAKKASAN Marks, Plaintiff Hakkasan LV is entitled to the exclusive right to use the

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1    HAKKASAN Marks in connection with Hakkasan Las Vegas to promote its restaurant, bar and

2    nightclub services and is entitled to enforce its rights against Defendants.  See id. at ¶ 15.  The

3    uniqueness of Hakkasan Las Vegas, along with the extensive advertising and promotion of Hakkasan

4    Las Vegas have resulted in the HAKKASAN name and mark being distinctive and famous for bar,

5    restaurant and nightclub services.  See id. at ¶ 16.

6        **B.**      **Facts Regarding Defendant.**

7        Upon information and belief, on or about February 26th, 2013, Defendants registered the

8    domain name <www.hakkasannightclubvegas.com> with Register.com.  See Whois record for

9    <www.hakkasannightclubvegas.com>, attached hereto as **Exhibit 3.**  Sometime in March 2013,

10   Defendants created a website linked to the domain name <www.hakkasannightclubvegas.com>.

11   The website claims that it is "your source for the most up to date developments about your favorite

12   Vegas mega-club".  See Print out from <www.hakkasannightclubvegas.com> dated 9/19/13,

13   attached hereto as **Exhibit 4**.  The website contains the Plaintiffs' federally registered trademark and

14   logo, together with images and other materials stolen directly from the Plaintiffs' own nightclub

15   website.  Egregiously, Defendants claim they own the copyrights in the materials portrayed on the

16   infringing website including Plaintiffs' images, information, and other materials.  See **Exhibit 4**.

17       The Defendants' infringing website also has a page for VIP Reservations under the

18   HAKKASAN name and logo seeking personal information about the customer.  See VIP

19   Reservations page print out from <www.hakkasannightclubvegas.com> dated 9/19/13, attached

20   hereto as **Exhibit 5.**  The manner in which defendants portray their business on this website is that

21   they are authorized to offer services to the public on behalf of the Hakkasan Las Vegas Nightclub,

22   when they are not.  See **Exhibit 5**.

23       Upon information and belief, since at least as early as March 2013 Defendants have

24   knowingly and willfully offered for sale and sold counterfeit services, including access to the

25   Hakkasan Las Vegas nightclub, VIP, bottle, and event services, in wrongful and unauthorized

26   association with the HAKKASAN Marks on Defendants' infringing website at

27   <www.hakkasannightclubvegas.com>.

28

LV 420085325v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1   Defendant,  Rockwell, also has a Facebook page on which he promotes his VIP services.

2   Upon information and belief, Rockwell may have additional pages on similar social networking

3   sites.  See, print out from the  Facebook page of Andrew Rockwell, attached hereto as **Exhibit 6**.

4   The statements concerning the Defendants on <www.hakkasannightclubvegas.com> are

5   false.  Defendants are **not** authorized to sell tickets, VIP, bottle services or any services to the public

6   on behalf of the Plaintiffs.  Plaintiffs' own website at <www.hakkasanlv.com> clearly states the

7   following:

**Important Ticketing and Entry Information**

8

9   • Hakkasan guarantees that all tickets purchased directly from Hakkasan including

10  Ticket Driver are authentic.
    • We do not guarantee the authenticity of tickets purchased from another source unless

11  they are an approved ticketing vendor by Hakkasan.
    • Approved ticketing vendors include Wantickets.com and Vegas.com.

12  See print Out from Plaintiffs' website <www.hakkasanlv.com>   attached hereto as **Exhibit** 7.

13  Defendants are not an authorized vendor of Hakkasan Las Vegas tickets and services, nor are

14  Defendants authorized to use the HAKKASAN Marks in any way.  Defendants are not authorized

15  promoters for the Plaintiffs' nightclub nor were they given permission to take images, videos or any

16  information from the Plaintiffs' website and post onto their site at

17  <www.hakkasannightclubvegas.com>.

18  Upon information and belief, Defendants' business VIP UNLTD, LLC's ability to do

19  business in Nevada has been revoked.   See, Nevada Secretary of State print out for VIP UNLTD,

20  LLC, attached hereto as **Exhibit 8.**  Also, upon information and belief, Defendants are not licensed

21  through the city, or county to do business in Las Vegas, Nevada.

22  In mid-September 2013, Plaintiffs became aware of Defendants' fraudulent claims

23  concerning their alleged affiliation with the Hakkasan Las Vegas club.  Importantly, Plaintiffs were

24  concerned that Defendants were fraudulently inducing members of the public to pay them money to

25  use their services believing they were purchasing authentic tickets and services for the famous

26  Hakkasan Las Vegas when in reality they were not.  On September 19, 2013, counsel for the

27  Plaintiffs sent the Defendants a cease and desist letter concerning the Defendants' trademark

28  infringement and other wrongful conduct, and demanded they immediately cease use of the Plaintiffs

LV 420085325v1

1  trademarks, and to remove all content concerning the Hakkasan Las Vegas Nightclub from

2  theirwebsite.  The letter was sent to the contact information provided in the Whois record for

3  <www.hakkasannightclubvegas.com>.  See Declaration of Lauri S. Thompson, ¶ 3 ("Thompson

4  Decl."); and September 19, 2013 letter from Lauri Thompson, Esq., attached hereto as **Exhibit 9**.

5      In response to the letter, the defendant, Rockwell, telephoned Ms. Thompson and stated he

6  was not going to cease use of the <www.hakkasannightclubvegas.com> domain name in relation to a

7  website concerning the Plaintiffs' nightclub.  See Thompson Declaration at ¶ 4.

8      Upon information and belief, if the Defendants do have a legitimate business (contrary to the

9  records showing they do not), offering  VIP services in Las Vegas, Defendants do not need to use the

10  HAKKASAN name and mark to promote those services.  This is, in fact, proven by Defendants

11  having another website for their business under the domain name <www.vip-unltd.com>

12      Defendants' claims are intentionally fraudulent and intended to dupe the public into believing

13  they have the connections and cachet in Las Vegas to provide the services they claim they can

14  provide at the Plaintiffs' world-renowned nightclub, when they do not.  Upon information and belief,

15  Defendants exaggerates their prowess as promoters to induce the public into paying them large sums

16  of money for events, VIP and bottle services in connection with the Hakkasan Las Vegas nightclub.

17  These services can range from the many hundreds if not thousands of dollars per person.

18      The counterfeit services offered by Defendants in connection with their unauthorized use and

19  duplication of the HAKKASAN Marks are not the genuine services of Plaintiffs.  Plaintiffs did not

20  license or approve of Defendants' use of HAKKASAN Marks in any way, and Plaintiffs have not

21  approved of Defendants' sale of the services on their website in false association with the

22  HAKKASAN Marks.

23      Defendants' unauthorized use of the HAKKASAN Marks on or in connection with the

24  advertising, marketing, offering for sale and sale of Defendants' counterfeit services is likely to

25  cause confusion, or to cause mistake or to deceive.  Defendants are wrongfully using the Plaintiffs'

26  famous name and mark, and world-renowned reputation for their own commercial and financial

27  benefit.

28

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1    If the public purchases tickets and services from the Defendants believing they are authorized

2    promoters of the Hakkasan Las Vegas nightclub, and believing that the tickets and services they

3    purchase are authentic, they are likely to be harmed after paying the Defendants large sums of

4    money for services which cannot be authorized by the Plaintiffs.  In the event members of the public

5    lose money because they purchased counterfeit Hakkasan services from the Defendants, the public

6    may blame the Plaintiffs and hold Plaintiffs' responsible when those services are not provided.

7    By using Plaintiffs' HAKKASAN name and trademark on their website and for their

8    services, Defendants were and are attempting to trade on the goodwill of Plaintiffs.  By using

9    Plaintiffs' HAKKASAN name and trademark on their website, Defendants were and are attempting

10   to create an association between their nightclub promotion services and those offered under the

11   Plaintiffs' famous trademarks.

12   **C.    Factual Background Regarding the Internet and Domain Names.**

13   Every web site on the World Wide Web of the Internet has a unique numerical address called

14   an Internet Protocol address, comprised of four numbers ranging from 1 to 255, separated by

15   decimals, such as 137.34.23.198.  See e.g., America Online, Inc. v. Huang, 106 F. Supp. 2d 848,

16   850-53 (E.D. Va. 2000).  In response to the consideration that most individual users would have

17   difficulty remembering strings of numbers, the domain name system ("DNS") was developed to

18   make the World Wide Web more user friendly.  The DNS associates a unique alphanumerical name,

19   the "domain name," with each Internet Protocol address.  See id.; Sporty's Farm L.L.C. v.

20   Sportsman's Market, Inc., 202 F.3d 489, 492-93 (2d Cir. 2000).

21   Domain names are comprised of a letter string of up to 26 letters, known as a second-level

22   domain ("SLD"), followed by a period (referred to in the pejorative as a "dot"), which is then

23   followed by a generic top-level domain ("TLD").  See America Online, 106 F. Supp.2d at 850-53.

24   TLDs include ".com," intended for commercial use, ".net" for networks, ".org" for non-profit

25   organizations, and ".gov" for governmental entities, among several others.  Significantly, the ".com"

26   TLD, as well as several other TLDs, is an open domain, such that anyone can register a domain

27   name in the ".com" TLD without oversight by the registrar.

28

*LV 420085325v1*

1    Most businesses strongly prefer to create domain names for their web sites that couple the

2    .com TLD with an SLD comprised of their distinctive trademark.  See Sporty's Farm, 202 F.3d at

3    493.   For example, Microsoft's web site is located at <microsoft.com>, and the Coca-Cola

4    Company's web site is located at <coke.com>.   However, there is no equivalent of the telephone

5    book or directory assistance on the Internet.   Therefore, consumers must intuitively locate a

6    particular company's web site and, usually, guess that the company's web site is the same as its

7    name.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1327 (9th Cir. 1998).  If a consumer

8    cannot find a particular company's web site through this intuitive process, he will become

9    discouraged and may fail to continue to search for a company's own web site.   See id.

10   Consequently, there is an inherent value attached to domain names that incorporate a company's

11   trademark or marks confusingly similar to a company's trademark, such as a common misspelling.

12       Domain names are registered on a first-come, first-served basis.  See e.g., Network Solutions,

13   Inc. v. Umbro Int'l, Inc., 529 S.E. 2d 80, 84-85 (Va. 2000).  The process for obtaining a domain

14   name is rather mechanical.  An individual interested in registering a domain name must contact one

15   of the official registrars for domain names, such as Network Solutions, Inc.  If the desired domain

16   name has not been registered, then the user may register or reserve the domain name for a fee.  See

17   id.  However, there is no oversight process to ensure that the person or entity registering the domain

18   name has any right to use the name, or to ensure that the domain name does not match a trademark

19   held by someone other than the registrant.  See id.

20       As a result of the fact that anyone can register any domain name as long as it is not already

21   registered, many businesses attempt to register domain names based on their trademarks and,

22   unfortunately, discover that the domain name employing their trademark has already been registered

23   by another.  In many cases, the domain names are registered by individuals or businesses who then

24   attempt to sell the domain name employing the trademark back to the trademark owner.  See Virtual

25   Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264, 267 (4th Cir. 2001).  This conduct is referred

26   to as "cyberpiracy" or "cybersquatting."  See id.

27       Unlike a traditional trademark dispute, where identical marks can be used by multiple parties

28   (e.g., *United Airlines* and *United Van Lines*), only one party can register a domain name.  See

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1 | Victoria's Cyber Secret, Ltd. v. V. Secret Catalogue, Inc., 161 F.Supp.2d 1339, 1351 (S.D. Fla.

2 | 2001).   Thus, the slight differences between domain names and registered marks, such as

3 | misspellings or the addition of minor or generic words to the disputed domain names are irrelevant

4 | to the cybersquatting analysis.  See id.

5 | **III.    LEGAL ARGUMENT**

6 |         Plaintiffs are entitled to an *ex parte* temporary restraining order and a preliminary injunction

7 | directing the Registrar to transfer and place on hold the Infringing Domain Name pending trial.

8 | Plaintiffs are also entitled to a preliminary injunction transferring the Infringing Domain Name and

9 | enjoining Defendants from further registration or use of the Infringing Domain Name for the

10 | pendency of the litigation.

11 |         To obtain a preliminary injunction, Plaintiffs must show that: (1) they will suffer irreparable

12 | harm if injunctive relief is not granted; (2) they are likely to succeed on the merits; (3) the balance of

13 | equities tips in favor of the moving party; and (4) granting the injunction is in the public interest.

14 | See Stanley v. University of Southern California, 13 F.3d 1313, 1319 (9th Cir. 1994).  Alternatively,

15 | this Court may issue injunctive relief if it finds: (1) a combination of probable success on the merits

16 | and the possibility of irreparable injury if relief is not granted, or (2) the existence of serious

17 | questions going to the merits and that the balance of hardships tips sharply in its favor.   See

18 | GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  A "serious question" is

19 | one for which the moving party has a "fair chance" of success on the merits.  See Stanley, 13 F.3d at

20 | 1319.  In the instant case, Plaintiffs are entitled to a temporary restraining order and preliminary

21 | injunction under either test.

22 |         **A.    Plaintiffs Will Suffer Irreparable Injury if the Court Does Not Grant
23 |                 Preliminary Injunctive Relief.**

24 |         A party seeking injunctive relief under Fed. R. Civ. P. 65 must demonstrate irreparable harm,

25 | meaning that "money damages alone will not suffice to restore the moving party to its rightful

26 | position."  Clark Pacific v. Krump Constr., Inc., 942 F.Supp. 1324, 1346 (D. Nev. 1996).  In cases

27 | involving mark infringement or mark dilution, it is well settled that irreparable harm is presumed.

28 | See GoTo.com, 202 F.3d at 1209; Toys "R" Us, Inc. v. Akkaoui, 40 U.S.P.Q.2d 1836 (N.D. Cal.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

1   1996).

2   Generally, in cases involving intellectual property infringement, where a likelihood of

3   success on the merits is demonstrated, not only is irreparable harm presumed, but preliminary

4   injunction **must issue**. See Candence Design Sys. Inc. v. Avant! Corp, 125 F.3d 824, 827 (9th Cir.

5   1997). Any other elemental analysis is unnecessary. See id. Therefore, upon a showing of success

6   on the merits of the Relevant Claims, Plaintiffs will have met their burden in establishing irreparable

7   harm and will be entitled to injunctive relief.

8       **B.    Plaintiffs Are Highly Likely to Succeed on the Merits.**

9   Plaintiffs' success on the merits is probable with respect to each of the Relevant Claims.

10  However, Plaintiffs are only required to demonstrate a probability of success on any one of the

11  Relevant Claims to be entitled to the relief requested.

12      (1)   Plaintiffs Are Likely to Succeed on the Merits of Their Anti-Cybersquatting

13            Claim.

14  Plaintiffs are likely to succeed on the merits of their claim under the Anti-Cybersquatting

15  protection Act (the "ACPA"). That Act provides, in pertinent part:

16  [A] person shall be liable in a civil action by the owner of a mark . . . if, without
17  regard to the goods or services of the parties, that person –

18  (i)    has a **bad faith intent** to profit from that mark . . .; and

19  (ii)   registers, traffics in, or uses a domain name that –

20      (I)   in the case of a mark that is **distinctive** at the time of the registration
            of the domain name, is **identical or confusingly similar** to that mark;
21            [or]

22      (II)  in the case of a famous mark that is **famous** at the time of registration
            of the domain name, is **identical or confusingly similar** to that mark.
23            ...

24

25  15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, Defendants are liable under the ACPA if they

26  have a bad faith intent to profit from registering, trafficking in or using as a domain name a mark

27  that is either identical or confusingly similar to a distinctive mark or identical, confusingly similar or

28  dilutive of a famous mark. The fact that Defendants have registered the Infringing Domain Name

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  with no apparent right to the HAKKASAN Marks strongly indicates Defendants intend to traffic in

2  the domain names and profit from such trafficking.

3      First, Plaintiffs' HAKKASAN Marks are famous and entitled to protection.  Plaintiffs'

4  trademarks are **arbitrary trademarks** because they do not suggest the goods and services offered.[2]

5  See Entrepreneus Media, Inc. v. Smith, 279 F.3d 1135, 1141 n. 2 (9th Cir. 2002).  Alternatively,

6  Plaintiffs' marks are **suggestive trademarks** because they "require imagination, thought or

7  perception to link the trademark with the goods offered."[3]  Interstellar Starship Services, 304 F.3d at

8  943 n.6.  Generally, arbitrary and suggestive trademarks "receive automatic protection because of

9  their inherent distinctiveness."  Id.

10      Courts consider several factors in assessing whether a person has the requisite "bad faith

11  intent" to profit from the mark, as defined by the ACPA, including but not limited to:

12 (I)  the trademark or other intellectual property rights of the person, if any, in the domain name;

14 (II)  the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

16 (III)  the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

18 (IV)  the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

20 (V)  the person's intent to divert consumers from the mark owner's online location to a site assessable under the domain name that could harm the goodwill represented by the mark, either for commercial gain with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site;

23 (VI)  the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name

---

[2]  For example, the use of "Amazon" as an online bookstore is an arbitrary trademark.  See Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 943 n. 6 (9th Cir. 2002).

[3]  For example, the use of "Roach Motel" for insect traps is a suggestive trademark.  See Interstellar Starship Services, 304 F.3d at 943 n. 6.

LV 420085325v1

in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)   the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. . . .

15 U.S.C. § 1125 (d)(1)(B).  A court is **"not limited to considering just the listed factors** when making [its] determination of whether the statutory criterion has been met.  The factors are, instead, expressly described as indicia that 'may' be considered along with other factors." Sporty's Farm, 202 F.3d at 498 (emphasis added).

In applying these factors, it is clear that Plaintiffs will be able to demonstrate Defendants' bad faith intent: (1) Defendants have no trademark rights in the registered domain name at issue; (2) the domain name at issue does not contain any of Defendants' legal names; (3) Defendants apparently made no use of the marks contained in the domain name at issue prior to registering the domain name; (4) Defendants have not made any *bona fide* noncommercial or fair use of the domain name at issue; (5) by using marks identical or confusingly similar to Plaintiffs' famous trademarks in the domain name for their infringing site, Defendants intend to divert consumers from Plaintiffs' web site and to create a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendants' domain name which will undoubtedly harm the goodwill and reputation created by the Plaintiffs' trademarks; and (6) the mark contained in the domain name at issue is confusingly similar to Plaintiffs' distinctive HAKKASAN trademark, as discussed below.  At least six of the nine factors clearly weigh in favor of finding that Defendants had the requisite bad faith intent to profit from the registration of a domain name that is confusingly similar to Plaintiffs' trademark.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone (702) 792-3773
Facsimile (702) 792-9002

*LV 420085325v1*

1

2      Plaintiffs also satisfy the second element of their claim under the ACPA.  The domain name

3  registered by Defendants is either identical or confusingly similar to the HAKKASAN trademark.

4  The Infringing Domain Name strongly resembles Plaintiffs' trademark and in fact, encompasses the

5  entirety of Plaintiffs' HAKKASAN mark.  Accordingly, Defendants' domain name satisfies the

6  "identical or confusingly similar" test of the ACPA.  Consumers throughout the world are aware that

7  Plaintiffs' HAKKASAN trademark is associated with bar, restaurant and nightclub services.

8  Therefore, this Court should issue a temporary restraining order and a preliminary injunction to

9  protect Plaintiffs' prior and exclusive rights in the marks based upon the probable success of

10 Plaintiffs' ACPA claim against Defendants.

11            (2)     Plaintiffs Are Likely to Succeed on the Merits of Their Trademark
                       Infringement and Unfair Competition Claims.
12

13      To succeed on the merits of their trademark infringement or unfair competition claims under

14 the Lanham Act, Plaintiffs must establish that Defendants' use of Plaintiffs' marks causes a

15 likelihood of confusion among the consuming public.  See 15 U.S.C. § 1114(a); Metro Publishing

16 Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993).  Such confusion can occur when

17 the infringer's sole action was the registering of an infringing domain name.  See Green Prods. Co.

18 v. Independence Corn By-Prods. Co., 992 F.Supp. 1070, 1080 (N.D. Iowa 1997) (holding that the

19 mere domain name registration of a competitor's mark resulted in a likelihood of confusion).  In fact,

20 Defendants' intent to deceive the public by adopting Plaintiffs' names and marks to lure consumers

21 into providing their personal information to obtain bottle service and guest list priority at Hakkasan

22 Las Vegas creates a presumption of confusion.  See Academy of Motion Pictures Arts and Sciences

23 v. Creative House Promotions, 944 F.2d 1446, 1456 (9th Cir. 1991).  See also Lozano Enterprise v.

24 La Opinion Publishing Co., 44 U.S.P.Q.2d 1764, 1767 (C.D. Cal. 1997), quoting Opticians Ass'n v.

25 Independent Opticians, 920 F.2d 187, 193 (3d Cir. 1990) (holding that a defendant's use of marks

26 identical to the plaintiff's marks for competitive services renders the confusion test under 15 U.S.C.

27 § 1114 "open and shut").  Plaintiffs are entitled to injunctive relief based upon Defendants'

28 infringing use.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Even without the presumption of confusion, Plaintiffs can demonstrate that there is a likelihood of confusion between their marks and Defendants' registered Infringing Domain Name. Generally, the likelihood of confusion between two marks is determined through the application of an eight-factor test, although not all factors must be considered.  See AMF Inc. v. Sleekcraft Boats, et al., 599 F.2d 341, 348-49 (9th Cir. 1979) (identifying the eight factor test); Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 526 (9th Cir. 1984) (holding that trial courts are not required to consider all factors).  In GoTo.com, 202 F.3d at 1205, 1207, the Ninth Circuit found that, in the context of the Internet, only three of the eight Sleekcraft factors need to be addressed:  (1) the similarity of the marks; (2) the relatedness of the goods or services; and (3) the simultaneous use of the Web as a marketing channel.  See id.  Plaintiffs meet all three of these factors.  There is a likelihood of confusion in the instant case because the Infringing Domain Name is virtually identical to Plaintiffs' marks, and the services offered on the website linked to the Infringing Domain Name are directly related to the restaurant and nightclub services provided under Plaintiffs' HAKKASAN Marks, and Plaintiffs and Defendants are simultaneously using the Internet as a marketing channel.

(a)  **The Marks are Identical or Extremely Similar.**

Plaintiffs' marks and Defendants' Infringing Domain Name are identical or extremely similar.  Similarity of marks is tested on three separate levels: sight, sound and meaning, with similarities given greater weight than differences.  See Plough, Inc. v. Kreis Labs, 314 F.2d 635, 638 (9th Cir. 1963); Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 157, 229 F.2d 37, 40, cert. denied, 351 U.S. 973 (1956).  However, generic or common descriptive words or text used in connection with a mark cannot be considered in a sight, sound and meaning analysis.  See Paccar, Inc. v. TeleScan Technologies, LLC, 319 F.3d 243, 252 (6th Cir. 2003), citing Instruct-O-Matic Corp. v. Inductotherm Corp., 747 F.2d 358, 363 (6th Cir. 1984) (stating that "[d]escriptive letters, syllables, or phrases are not considered in determining whether two marks are similar").  See also Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 444 n. 1 (9th Cir. 1980) (confirming that the Ninth Circuit does not consider descriptive text in determining similarity of marks).

1

2   Defendants' Infringing Domain Name contains the entirety of Plaintiffs' mark and also

3   includes the term "Vegas," the very location of Plaintiffs' Hakkasan venue.  Defendants use the text

4   of the Infringing Domain Name for the same purpose and manner as Plaintiffs' uses of their marks,

5   and the text is either identical or extremely similar in sight, sound and meaning to Plaintiff's marks.

6   **(b)     Defendants' Goods and Services are Identical to Plaintiffs' Goods and Services.**

7   The goods and services used in connection with the Infringing Domain Name are, at a

8   minimum, related if not identical to the services provided by Plaintiffs under their marks.  Plaintiffs

9   offer bar, restaurant, nightclub and related services under the HAKKASAN Marks, and Defendants'

10   Infringing Domain Name invites users to submit personal information to request bottle service and

11   obtain priority on the guest list at Hakkasan Las Vegas.  Thus, users visiting the Infringing Domain

12   Name are led to believe that Plaintiffs are somehow affiliated with or sponsoring Defendants'

13   services.  The unique nature of the Internet significantly increases the likelihood of confusion of the

14   source of the goods and services offered in connection with similar marks.  See GoTo.com, 202 F.3d

15   at 1207.

16   However, even if Defendants utilized the Infringing Domain Name to offer goods and

17   services wholly different from those offered by Plaintiffs, Defendants would still be creating a

18   likelihood of confusion between the Infringing Domain Name and the web sites to which it is linked,

19   and Plaintiffs' marks.  The United States Court of Appeals for the Ninth Circuit found in GoTo.com

20   that "the use of remarkably similar trademarks on different websites creates a likelihood of

21   confusion amongst web users" even when the goods and services are not identical in nature.  202

22   F.3d at 1207.  In fact, even the mere registration of the Infringing Domain Name is sufficient to

23   create a likelihood of confusion.  See Green Prods. Co., 992 F.Supp. at 1079 (stating that

24   "[d]efendant's domain name and home page address are external labels that, on their face, cause

25   confusion among Internet users and may cause Internet users who seek plaintiff's web site to expend

26   time and energy accessing defendant's web site").

27   Accordingly, any use on the Internet by Defendants of the Infringing Domain Name or

28   Plaintiffs' marks would create a likelihood of confusion with those marks, even if Defendants' use

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  was not similar in nature.  In the present case, however, the goods and services are not merely

2  deemed similar because they were provided in connection with the Internet, the goods and services

3  are essentially the same, further increasing the likelihood of confusion and mandating remediation.

4  <center>(c)    The Marketing Channels Are the Same.</center>

5  There can be no doubt that Plaintiffs and Defendants are simultaneously using the Internet as

6  a channel of trade.  Plaintiffs use the Internet to advertise the services offered under their marks,

7  including bar, restaurant and nightclub services.  Defendants' use of the Internet makes it possible

8  for them to divert consumers searching for the Plaintiffs' web site to Defendants' web site, which

9  utilizes the Infringing Domain Name.

10  The fact that the marketing channels are the same increases the likelihood of confusion for

11  consumers.  See Sleekcraft, 599 F.2d at 353.  Moreover, the Internet as a marketing channel is

12  "particularly susceptible to a likelihood of confusion."  See GoTo.com, 202 F.3d at 1207.  Finally,

13  domain names on their face cause consumer confusion because consumers expending time and

14  energy to access one website may be diverted to another's website.  See Green Prods. Co., 992

15  F.Supp. at 1077.

16  Therefore, it is very probable that Plaintiffs will prevail on their trademark infringement and

17  unfair competition claims under the Lanham Act.  Plaintiffs are the owner of their marks with prior

18  and exclusive rights, including, but not limited to, the right to exclude Defendants from using their

19  marks.  Defendants' use of the Infringing Domain Name and Plaintiffs' marks causes a likelihood of

20  confusion, and Plaintiffs are entitled to a temporary restraining order and a preliminary injunction.

21
22
<center>(3)    Plaintiffs Are Likely to Succeed on the Merits of Their Common Law Trademark Infringement Claim.</center>

23  Plaintiffs will likely succeed on the merits of their mark infringement claim against

24  Defendants under Nevada common law.  To show common law mark infringement, Plaintiffs need

25  only show:  (a) that Plaintiffs are the owner of a protectable right in the marks, and (b) that

26  Defendants' registration of the Infringing Domain Name is likely to "confuse, cause mistake or

27  deceive an 'appreciable number' of reasonable customers" with respect to the marks.  A.L.M.N., Inc.

28  v. Rosoff, 757 P.2d 1319, 1321 (Nev. 1988).

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada  89169
Telephone (702) 792-3773
Facsimile (702) 792-9002

(a)      **Plaintiffs Have Protectable Rights in Their Marks.**

As discussed above, Plaintiffs have protectable rights in and to the HAKKASAN trademark based upon the federal registration of the mark and based upon the exclusive and continuous use of the mark before or since the opening of Hakkasan Las Vegas.

(b)      **Defendants' Use of the Infringing Domain Name is Likely to Cause Confusion with Plaintiffs' Marks.**

Defendants' use of the Infringing Domain Name is likely to "confuse, cause mistake or deceive an 'appreciable number' of reasonable customers."  See Rosoff, 757 P.2d at 1323.  To determine the likelihood of confusion between similar marks, the Supreme Court of Nevada has adopted a seven factor test consisting of: (i) similarity of marks; (ii) similarity of services; (iii) marketing channels used; (iv) evidence of actual confusion; (v) strength of the mark; (vi) junior user's intent in adopting the mark; and (vii) degree of care likely to be exercised by the purchaser.  Id. at 1324.

Plaintiffs have already demonstrated the applicability of factors (i), (ii), (iii), (v), (vi) and (vii) in the discussion above.  See Sections III.A, III.B(1), and III.B(2), supra.  With regard to the fourth factor, courts do not require proof of actual confusion to find a likelihood of confusion.  See e.g., Drexel Enters., Inc. v. Hermitage Cabinet Shop, Inc., 266 F. Supp. 532, 537 (N.D.Ga. 1967).  Plaintiffs have not as yet found it necessary to engage in the expense of conducting surveys to identify actual confusion but reserves the right to do so, as the longer the Infringing Domain Name is permitted to divert customers from Plaintiffs' website, the greater the likelihood of actual confusion.

Plaintiffs' probable success, therefore, on its common law mark infringement claim is very high.  As Plaintiffs are the owner and licensee of strong marks with prior, continuing and exclusive rights in connection with use of the HAKKASAN Marks to promote Hakkasan Las Vegas and as Defendants' use of the Infringing Domain Name and the marks causes a likelihood of confusion under Nevada law, this Court should issue a temporary restraining order and a preliminary injunction to preserve Plaintiffs' rights in and to its marks.

/ / /

/ / /

**C.    Plaintiffs Have Raised Serious Questions as to the Merits, and the Hardships Balance in Favor of Plaintiffs**

Even if Plaintiffs' success on the merits of the Relevant Claims, as discussed above, was not probable, Plaintiffs would be entitled to the injunctive relief requested upon a showing that there are serious questions as to the merits of Plaintiffs' claims and that the balance of hardships weigh in Plaintiffs' favor.   See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001) (citation omitted).

The first prong of this alternative test requires a far lower showing than probable success on the merits.   All that need be shown is the mere existence of serious questions as to the merits of Plaintiffs' claims.   See A&M, 239 F.3d at 1025 (where the first prong of the alternative test was met by the mere raising of meritorious issues that were the subject of the claims alleged).   Plaintiffs meet this prong as they have raised serious questions going to the merits of the Relevant Claims.   These serious questions include, without limitation, all of the elements of each of the Relevant Claims upon which Plaintiffs have demonstrated probable success.   See id. (where the serious questions raised were merely elements of the claims for which the plaintiffs were seeking injunctive relief).   As these serious questions have already been raised in the above probable success analysis, they need not be repeated here.

Further, the hardships strongly balance in favor of Plaintiffs.   Issuance of the injunction would merely require Defendants to stop using identical or confusingly similar names or marks.   Defendants are permitted to register other, non-infringing domain names to provide consumers with access to their nightlife services.

In contrast, by failing to issue the injunction, Defendants would be allowed to continue generating business by virtue of Plaintiffs' famous trademarks.   Moreover, the continued use would also cause the dilution and tarnishment of Plaintiffs' names and marks.   Plaintiffs would continue to suffer a loss of control over their goodwill and reputation, over which Defendants now exercise a disconcerting amount of worldwide control through the Internet.

Finally, issuance of the injunction will maintain the status quo.   "[T]he status quo is the last uncontested status which preceded the pending controversy."   Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963), cert denied, 375 U.S. 821 (1963).   Defendants' acts

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

referenced in Plaintiffs' Complaint began occurring around February 2013, became known to Plaintiffs as infringing acts around September 2013, and continue to the present. Accordingly, an injunction would merely return the parties to the status quo that existed a couple of months ago, before Defendants began using the HAKKASAN Marks to solicit users' personal information by promising bottle service and guest list priority at Hakkasan Las Vegas.

### D. Protection of Consumers Weighs in Favor of Injunctive Relief.

The primary goal of trademark law is to protect consumers against deception. See Lozano, 44 U.S.P.Q.2d at 1769, citing International Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 918 (9th Cir. 1980). In this instance, the consequences of consumer deception are potentially very grave.

As long as Defendants are permitted to use Plaintiffs' HAKKASAN Marks to lure consumers into providing personal information on Defendants' website for the purpose of obtaining VIP services at Hakkasan Las Vegas, consumers will continue to be deceived into believing that Defendants' services are sponsored by or affiliated with Hakkasan Las Vegas. In other words, consumers will falsely believe that they will be safe giving away their personal information because there is some association with Plaintiffs' restaurant and nightclub. Because there is a chance that consumers' personal information will not be safe when given to Defendants, it is imperative that consumers not be led into believing that they are dealing with Plaintiffs' reputable business, when, in fact, they are not.

### E. This Court Should Only Require Nominal Security.

In the event that the Court requires that a bond or other security be posted by Plaintiffs, Plaintiffs request that the Court set an amount that is no greater than $100. Plaintiffs are well established in Nevada. During the pendency of this litigation, Defendants would not suffer from having the registration for the Infringing Domain Name maintained with Register.com (registrar) for the pendency of the litigation.

/ / /

/ / /

/ / /

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**F.** **In Addition to the Notice Requirements of Rules 4 and 5 of the Federal Rules of Civil Procedure, Notice Should be Permitted Via E-Mail.**

Plaintiffs request that this Court permit service of the summons, complaint, motion, temporary restraining order and notice of the hearing on the preliminary injunction by e-mail, in addition to effectuating service as mandated by Fed. R. Civ. P. 4 and 5.  Otherwise, a just, speedy and inexpensive determination of the preliminary injunction cannot be achieved.  See Fed. R. Civ. P. 1.  Under the Registrar's terms and conditions, and pursuant to UDRP rules, a registrant must provide a current email address in the domain name WHOIS information.  Defendants have provided an email address.

If the Court grants Plaintiffs' request for a temporary restraining order, the order will only remain in effect for ten (10) days and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order.  Fed. R. Civ. P. 65(b).  The process of serving the Defendants with the summons, complaint, motion, temporary restraining order and order for hearing on the preliminary injunction could exceed the ten (10) day period and, most likely, not afford Defendants timely notice of the temporary restraining order and the preliminary injunction.  And, as explained above, Plaintiffs would be irreparably harmed if the temporary restraining order were to expire before it could be converted into a preliminary injunction.  Therefore, in addition to regular service of the complaint, summons, motion and orders under Fed. R. Civ. P. 4 and 5, service by e-mail would ensure prompt notice to Defendants and would be reasonably calculated to provide sufficient and adequate notice to Defendants.

## IV.    CONCLUSION

Based upon the foregoing points and authorities, Plaintiffs have shown that they meet either of the two alternative tests developed by the United States Court of Appeals for the Ninth Circuit for entitlement to injunctive relief.  Plaintiffs have demonstrated that success as to each of the Relevant Claims is, at the very least, probable.  Alternatively, Plaintiffs have raised serious questions and

/ / /

/ / /

/ / /

/ / /

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085325v1

1  shown that the balance of hardships tips in their favor.  Accordingly, Plaintiffs respectively request

2  that the Court grant their Motions for a Temporary Restraining Order and for a Preliminary

3  Injunction pending adjudication of this matter on the merits.

4        DATED:  30th day of October, 2013.

6                      GREENBERG TRAURIG, LLP

7                      /s/ Lauri S. Thompson

8                      Lauri S. Thompson (Bar No. 6846)
                    Laraine Burrell (Bar No. 8771)

9                      Shauna L. Welsh (Bar No. 11320)
                    3773 Howard Hughes Parkway

10                     Suite 400-North
                    Las Vegas, Nevada 89169
                    *Counsel for Plaintiff*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone (702) 792-3773
Facsimile (702) 792-9002

LV 420085325v1

LAURI S. THOMPSON, ESQ.
Nevada Bar No. 6846
thompsonl@gtlaw.com
LARAINE BURRELL, ESQ.
Nevada Bar No. 8771
burrelll@gtlaw.com
SHAUNA L. WELSH, ESQ.
Nevada Bar No. 11320
welshs@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| HAKKASAN LV, LLC, a Nevada limited liability company, HAKKASAN LIMITED, a foreign private limited company, | Case No.:  2:13-cv-1999-JCM-NJK |
| Plaintiffs, | **DECLARATION OF LAURI S. THOMPSON IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| VIP, UNLTD, LLC, a Nevada limited liability company,  ANDREW ROCKWELL, an individual, | |
| Defendants. | |

I, Lauri S. Thompson, declare under penalty of perjury under the laws of the United States that the facts contained herein are of my personal knowledge, and if called upon, I could and would competently testify to them.

1.    I am a shareholder with Greenberg Traurig, LLP, counsel for Plaintiffs in the above-referenced matter.

LV 420085242v1

2.     This declaration is submitted in support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Motion for Preliminary Injunction.

3.     On September 19, 2013, I sent a cease and desist letter to Defendant Andrew Rockwell concerning the Defendants' trademark infringement and other wrongful conduct, and demanded they immediately cease use of the Plaintiffs' trademarks, and to remove all content concerning the Hakkasan Las Vegas Nightclub from their website.  The letter to Mr. Rockwell was sent to the contact information provided in the Whois record for www.hakkasannightclubvegas.com.

4.     On October 1, 2013, I received a phone call from Defendant Andrew Rockwell who stated that he was not going to cease use of the www.hakkasannightclubvegas.com domain name in relation to a website concerning Plaintiffs' nightclub.

Executed this 30th day of October, 2013.

/s/ Lauri S. Thompson
LAURI S. THOMPSON

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085242v1

1  LAURI S. THOMPSON, ESQ.
   Nevada Bar No. 6846
2  thompsonl@gtlaw.com
   LARAINE BURRELL, ESQ.
3  Nevada Bar No. 8771
   burrelll@gtlaw.com
4  SHAUNA L. WELSH, ESQ.
   Nevada Bar No. 11320
5  welshs@gtlaw.com
   GREENBERG TRAURIG, LLP
6  3773 Howard Hughes Parkway
   Suite 400 North
7  Las Vegas, Nevada 89169
   Telephone: (702) 792-3773
8  Facsimile: (702) 792-9002
   *Counsel for Plaintiff*

9

10                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**

11

12  HAKKASAN LV, LLC, a Nevada          Case No.: 2:13-cv-1999-JCM-NJK
    limited     liability     company,
13  HAKKASAN LIMITED, a foreign
    private limited company,            **DECLARATION OF LARAINE M. I.**
14                                       **BURRELL, ESQ. IN SUPPORT OF**
                    Plaintiffs,          **PLAINTIFFS' *EX PARTE* APPLICATION**
15                                       **FOR TEMPORARY RESTRAINING**
                                         **ORDER**
    v.
16
    VIP, UNLTD, LLC, a Nevada limited
17  liability company, ANDREW
    ROCKWELL, an individual,
18
                    Defendants.
19

20

21         I, LARAINE M. I. BURRELL, ESQ., declare under penalty of perjury under the laws of the

22  United States that the facts contained herein are of my personal knowledge, and if called upon, I

23  could and would competently testify to them.

24         1.      I am an associate with Greenberg Traurig, LLP, counsel for Plaintiffs in the above-

25  referenced matter.

26         2.      This Declaration is submitted in support of Plaintiff's *ex parte* Application for

27  Temporary Restraining Order.

28         3.      Greenberg Traurig, LLP has filed hundreds of anti-cybersquatting actions since the

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone (702) 792-3773
Facsimile (702) 792-9002

1   passage of the Anti-cybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. §

2   1125(d)(1)(A), and I personally have been involved in filing numerous anti-cybersquatting actions.

3        4.      An *ex parte* Temporary Restraining Order has been requested in each anti-

4   cybersquatting action I have been involved in.

5        5.      Following the passage of the ACPA, plaintiffs quickly realized that providing notice

6   to the Defendant of the lawsuit before the domain name in question was beyond the Defendant's

7   immediate grasp resulted in the Defendant transferring that domain name to another registrant and/or

8   another registrar.  Such action by the Defendant negates the court's jurisdiction and requires the

9   filing of a second lawsuit after the Plaintiff spends additional time and fees locating the domain

10  name.

11       6.      In the instant matter, Defendant registered and is using in bad faith the domain name

12  <hakkasanightclubvegas.com> (the "Infringing Domain Name").

13       7.      The Infringing Domain Name incorporates the Plaintiff parent company's registered

14  trademarks.

15       8.      Plaintiffs are seeking an *ex parte* Temporary Restraining Order from this Court.

16       9.      Plaintiffs require the Temporary Restraining Order to be granted *ex parte* because as

17  soon as Defendant receives notice of this action, he could easily and nearly instantaneously transfer

18  the registration of the Infringing Domain Name from the current registrar to any number of other

19  registrars located outside the United States as well as to other registrants unwilling to abide by this

20  Court's orders.

21       10.     If Defendant transfers the Infringing Domain Name prior to the hearing on the

22  Application for Temporary Restraining Order, Plaintiffs would be deprived of the ability to recover

23  registration of the Infringing Domain Name and the ability to enforce their intellectual property

24  rights.

25       11.     Therefore, notice to the Defendant prior to the locking and transfer of the domain

26  name, as requested in the Application for Temporary Restraining Order would result in irreparable

27  injury to Plaintiff.

28       12.     Because notice to the Defendant would result in immediate irreparable injury to the

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone (702) 792-3773
Facsimile (702) 792-9002

1  Plaintiff, the Plaintiff has made no effort to notify the Defendant of its request for a Temporary

2  Restraining Order.

3       13.     The documents attached as Exhibits are the original documents or true and accurate

4  copies of the original documents and are what they purport to be.

5       DATED: October 30, 2013.

6

7

8                               Laraine M. I. Burrell, Esq.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone  (702) 792-3773
Facsimile  (702) 792-9002

# Exhibit 1

1   LAURI S. THOMPSON, ESQ.
    Nevada Bar No. 6846
2   thompsonl@gtlaw.com
    LARAINE BURRELL, ESQ.
3   Nevada Bar No. 8771
    burrelll@gtlaw.com
4   SHAUNA L. WELSH, ESQ.
    Nevada Bar No. 11320
5   welshs@gtlaw.com
    GREENBERG TRAURIG, LLP
6   3773 Howard Hughes Parkway
    Suite 400 North
7   Las Vegas, Nevada 89169
    Telephone: (702) 792-3773
8   Facsimile: (702) 792-9002
    *Counsel for Plaintiff*

9

10              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA

11  HAKKASAN LV, LLC, a Nevada          Case No.:
    limited      liability    company,
12  HAKKASAN LIMITED, a foreign
    private limited company,
13                                      DECLARATION OF JAMES
                                        BRUCCULERI IN SUPPORT OF
14              Plaintiffs,             PLAINTIFF'S *EX PARTE* APPLICATION
                                        FOR TEMPORARY RESTRAINING
15  v.                                  ORDER AND MOTION FOR
                                        PRELIMINARY INJUNCTION
16  VIP, UNLTD, LLC, a Nevada limited
    liability company,  ANDREW
17  ROCKWELL, an individual,

18              Defendants.

19

20

21

22          I, James Brucculeri, declare under penalty of perjury under the laws of the United States that

23  the facts contained herein are of my personal knowledge, and if called upon, I could and would

24  competently testify to them.

25          1.      This declaration is submitted in support of Plaintiff's *Ex Parte* Application for

26  Temporary Restraining Order and Motion for Preliminary Injunction.

27

28

                              Page 1 of 4

2.      I am a Director of Plaintiff Hakkasan LV, LLC ("Plaintiff") and I have been a Director since February 2013.

3.      Plaintiff is an indirect wholly owned subsidiary of Hakkasan Limited ("Hakkasan Parent").

4.      Plaintiff owns and operates Hakkasan, a premier nightclub and restaurant venue located inside the MGM Grand Hotel and Casino on the Las Vegas Strip ("Hakkasan Las Vegas").

5.      Hakkasan Parent also owns and/or operates, either directly or through its subsidiary companies, several other Hakkasan restaurants around the globe, including Dubai, London, New York, San Francisco and Miami.

6.      Hakkasan Las Vegas encompasses approximately 80,000 square feet of restaurant, nightclub and lounge space.  This venue features a modern Cantonese restaurant headed up by a Michelin-starred chef, a 55,000 square foot nightclub featuring elaborate cocktail lounges and a garden pavilion with a two-story waterfall.  In addition, Plaintiff has booked some of the most famous DJ's in the world to perform at Hakkasan Las Vegas, including Tiësto, Calvin Harris, and Steve Aoki.

7.      Hakkasan Parent owns the mark HAKKASAN in connection with, among other things, restaurant, bar and nightclub services.  In particular, Hakkasan Parent owns a federal trademark registration (U.S. Reg. No. 3,789,248) for HAKKASAN for bar and restaurant services and a pending trademark application (U.S. Ser. No. 85/928057) for nightclubs, nightclub services in the nature of reservation and booking services for the purpose of arranging for admission to nightclubs, and related services (the "HAKKASAN Marks").

8.      Plaintiff is a licensee of the HAKKASAN Marks in connection with its ownership and operation of Hakkasan Las Vegas.

9.      Neither Hakkasan Parent's federal trademark registration nor its pending trademark application has been abandoned, canceled or revoked.

10.     Since opening the original HAKKASAN in 2001 and its first US location in 2009, Hakkasan Parent and its predecessors-in-interest, have used the HAKKASAN Marks in connection with advertising and promoting its restaurants in the United States and around the world.  As a

Page 2 of 4

LV 420085239v1

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  licensee of the HAKKASAN Marks, Plaintiff has used the HAKKASAN Marks to promote its Las

2  Vegas restaurant and nightclub services in the United States and around the world since 2012.

3       11.  The HAKKASAN name and mark is an internationally recognized and respected

4  name in the restaurant and nightlife industry.

5       12.  Plaintiff has spent millions of dollars to advertise and promote the HAKKASAN

6  Marks in print, broadcast media and on the Internet through its website, accessible throughout the

7  United States and around the world at <hakkasanlv.com>.  A true and correct copy of the home

8  page for Plaintiff's website is attached hereto as **Exhibit A**.

9       13.  In addition, Plaintiff has made extensive use of the HAKKASAN Marks on, among

10  other things, signage, billboards and promotional materials.

11       14.  Based on its federal trademark registration, pending federal trademark application and

12  extensive use, Hakkasan Parent owns the exclusive right to use its HAKKASAN Marks in

13  connection with restaurant, bar, nightclub and related services.

14       15.  As a licensee of the HAKKASAN Marks, Plaintiff is entitled to the exclusive right to

15  use the HAKKASAN Marks in Las Vegas, Nevada in connection with restaurant, bar and

16  nightclub services and is entitled to enforce its rights against Defendants.

17       16.  The uniqueness of Hakkasan Las Vegas, along with the extensive advertising and

18  promotion of Hakkasan Las Vegas have resulted in the HAKKASAN name and mark being

19  distinctive and famous for bar, restaurant and nightclub services.

20       17.  Plaintiff's HAKKASAN Marks were famous prior to Defendants' use of Plaintiff's

21  marks in connection with its nightclub and nightlife activities.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085239v1

18.   No other entities are legitimately using the HAKKASAN Marks to promote or provide restaurant and nightclub services in Las Vegas, Nevada.   Further, Plaintiff continuously takes steps to ensure that any infringing uses of its marks cease immediately.

Executed this 30<u>th</u> day of October, 2013.

_____
JAMES BRUCCULERI

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420085239v1

# Exhibit 2

Hakkasan





- Hotel
Dinner Reservations

**Upcoming Events**

- □



**Calvin Harris
with Fergie DJ**

Thursday October 31 | Tickets Reservations



**Tiësto**

Friday November 1 | Tickets Reservations



## Tommy Trash

Saturday November 2 <u>Tickets</u><u>Reservations</u>



## TJR | Bambi

Sunday November 3 <u>Tickets</u><u>Reservations</u>

**Blogs and Media**



## Tommy Trash – Let's get "Trashed"

Oct 24, 2013/in <u>Featured</u>, <u>Videos</u>  <u>Tommy Trash</u>

Fist in the air and unmistakable looks at large, Tommy Trash is not your stereotypical Dance icon. With an armory of his own carefully created anthems, he has thrown to one side the clean-shaven image of EDM idols.



## Halloween 2013 Contest

Oct 22, 2013/in <u>Featured</u>

**Galleries**



## Dada Life at Hakkasan Nightclub October 27th

October 27, 2013



**Hardwell at Hakkasan Nightclub October 26th**

October 26, 2013



**Tiësto at Hakkasan Nightclub October 25th**

October 25, 2013



**NERVO at Hakkasan Nightclub October 24th**

October 24, 2013

**Contact**

Nightclub 702.891.3838
Restaurant 702.891.7888

General inquiries email:
info@angelmg.com

Press inquiries email:
pr@amgcorp.com

**Location**

MGM Grand Hotel & Casino
3799 Las Vegas Boulevard South
Las Vegas, Nevada 89109

**Hours of Operation**

Thursday, Friday, Sunday:
10:00pm – close
Saturday: 9:00pm – close

**Additional Links**

- FAQ
- Contact
- Corporate
- Careers
- Restaurant

**Lets Get Social**



# Exhibit 3

HakkaSanNightclubVegas.com - HakkasanNightclubVegas |



You are logged in as Nikyalex    Upgrade Your Account | Log out | Help ⑦



| themoneyteam.com | Whois Search | Search |

| HOME | RESEARCH | MONITOR | BUY DOMAINS | LEARN | MY ACCOUNT |

Overview   Whois Lookup   Reverse Whois   Whois History   Domain Report   Hosting History   Screenshots   Reverse Name Server   Reverse IP   DNS

## HakkaSanNightclubVegas.com Whois Record ✎

🗩 +1   ✉ Tweet   Like

View Screenshot History for hakkasannightclubvegas.com

Search Whois Records  | hakkasannightclubvegas.com |   Search

WE ARE HIRING   You the smart one? Let us show you the job you dream of

| Whois Record | Site Profile | Registration | Server Stats | My Whois |

### Whois Record

Related Domains For Sale or At Auction      1  2  3  More ›

Chakkar.com ($1,195)        HakkaHouse.com ($1,295)      HakkaClub.com ($1,795)
ChakkarAm.com ($799)      TelYChakkar.com ($799)       TellyChakkarS.com ($799)

Email Search: andrewjrockwell@gmail.com  is associated with about 2 domains
domainregistrar@register.com  is associated with about 914,760 domains

Registrar History: 1 registrar
NS History: 1 change on 2 unique name servers over 0 year.
IP History: 3 changes on 2 unique IP addresses over 0 years.
Whois History: 4 records have been archived since 2013-02-28 .
Reverse IP: 24 other sites hosted on this server.

🚩 Monitor This Domain Name

📄 Preview the complete Domain Report for hakkasannightclubvegas.com

Registrant:
    VIP UNLTD, LLC
    andrew rockwell
    2186 E. Desert Inn Rd
    Las Vegas, NV 89169
    US
    Phone: +1.7026086494
    Email: andrewjrockwell@gmail.com

Registrar Name....: Register.com
Registrar Whois...: whois.register.com
Registrar Homepage: www.register.com

Domain Name: hakkasannightclubvegas.com
    Created on..............: 2013-02-26
    Expires on..............: 2014-02-26

Administrative Contact:
    VIP UNLTD, LLC
    andrew rockwell
    2186 E. Desert Inn Rd
    Las Vegas, NV 89169
    US
    Phone: +1.7026086494
    Email: andrewjrockwell@gmail.com

Technical Contact:
    Registercom
    Domain Registrar
    12808 Gran Bay Pkwy
    West Jacksonville, FL 32258
    US
    Phone: +1.9027492701

Country TLDs   General TLDs

Available domains for registration:

☐ HakkaSanNightclubVegas.at    Register
☐ HakkaSanNightclubVegas.be    Register
☐ HakkaSanNightclubVegas.ch    Register
☐ HakkaSanNightclubVegas.cn    Register
☐ HakkaSanNightclubVegas.co.uk  Register
☐ HakkaSanNightclubVegas.de    Register
☐ HakkaSanNightclubVegas.dk    Register
☐ HakkaSanNightclubVegas.es    Register
☐ HakkaSanNightclubVegas.eu    Register
☐ HakkaSanNightclubVegas.fr    Register

Register All Selected >    Show all (19) >

# Exhibit 4



HakkasanNightclubVegas | Artists - HakkasanNightclubVegas





HakkasanNightclubVegas |



INTERESTING LINKS

Besides are some interesting links for you! Enjoy your stay :)

PAGES

About Us

Artists

Portfolio 3 Column

Portfolio 4 Column

Shortcodes

Voice

Voice Tutorials

VIP Request

VIP Reservations

Welcome!

CATEGORIES

News

Uncategorized

ARCHIVE

September 2013

August 2013

July 2013

April 2013

December 2010

August 2010

May 2010

March 2010

© Copyright - HakkasanNightclubVegas - Design by think

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

Welcome to HakkasanNightclubVegas.com            close



# Hakkasan
## Nightclub Vegas

ARTISTS      VIP RESERVATIONS      NEWS

## Archive for category: News

SEPTEMBER 7, 2013

### Hakkasan Nightclub and Restaurant is the new age Las Vegas

0 Comments  /  in News  /  by admin

Hakkasan Nightclub and Restaurant is the new age Las Vegas. Forget about the glamour and charm of old Las Vegas and give in to the temptation of the new age Vegas with the Hakkasan Restaurant & Nightclub. This is the place that can easily sweep you [...]

Click here to view original web page at pr-bg.com

off your feet and make your feel like the world is under your giant self. This space boasts of the most modern ambience that has a touch of the classical Las Vegas Hakkasan Nightclub. There is a club, a wonderful restaurant and some great services that will make your experience in Vegas the best.

The space is composed of five individual locales. The first is the Hakkasan restaurant which is ably supported by the most sought after

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

places in the area i.e. The Ling Ling lounge and the Ling Ling nightclub. If you move up, you will find Rehab, the primary nightclub which is followed by the floor dedicated to the creative musical geniuses or the Resident DJs. Finally, there is the space for sky suites and special bars available to special peoples and parties only.

To get tickets for events at Hakkasan please click this link:

SEPTEMBER 7, 2013

## Hakkasan Las Vegas Hosts Meet and Greet With Turntable Star Steve Aoki Today



0 Comments  /  in News  /  by admin

Hakkasan Las Vegas and MGM Grand Hotel & Casino will welcome DJ superstar Steve Aoki when he hosts a special meet and greet at Grand & Company, located in the main lobby of MGM Grand, today, Aug. 4 from 4 p.m. to 5 p.m. Known for his energetic and [...]

Click here to view original web page at www.broadwayworld.com

captivating "Neon Future" parties at Hakkasan Nightclub, Aoki will gather with his devoted fans for an intimate T-shirt signing.

Electronic music aficionados who purchase one of Aoki's custom shirts will have the once-in-a-lifetime opportunity to meet the icon and take home an exclusive autographed tee. With their shirt purchase, guests also will receive a wristband providing complimentary entry into Hakkasan Nightclub that evening to experience Aoki's heart-pumping performance first-hand.

The nightclub at Hakkasan Las Vegas is the bold evolution of the prestigious global restaurant brand into an all-encompassing nightlife experience. A collaboration between celebrated international dining group Hakkasan Ltd. and leading entertainment and nightlife company Angel Management Group, the nightclub features creative partnerships with premier musical talent across various genres who have tailored their performances to suit the unique capabilities of the venue and compliment their own versatile styles. Hakkasan Nightclub offers a diverse nightlife experience with a variety of areas and atmospheres, cutting-edge technology and inspired design immersed in three levels of refined decadence.

AUGUST 27, 2013

## Calvin Harris is top of the DJs

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

0 Comments  /  in News  /  by admin

Calvin Harris is top of the DJs 3:25pm
Thursday 15th August 2013 in Showbiz
News © Press Association 2013 Calvin
Harris has been named as the top earning DJ
by Forbes Calvin Harris has been named the
world's top music-maker, ahead of fellow
DJs Tiesto and David Guetta. The [...]

Click here to view original web page at www.salisburyjournal.co.uk

AUGUST 27, 2013

## Hakkasan Evolution: Growing From Las Vegas Megaclub To Global Lifestyle Brand



0 Comments  /  in News  /  by admin

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

Hakkasan CEO Neil Moffitt says the company's Las Vegas club is only the beginning of its expansion plans. (Photo courtesy of Angel Management Group) In April, one of Las Vegas' newest dance venues, Hakkasan, opened with its fair share of superlatives. Branded as the largest nightclub in the nation, [...]

Click here to view original web page at www.forbes.com

AUGUST 27, 2013

## Haute Event: Nas Performs at Hakkasan for the Hudson and Creative Recreation After-Party



0 Comments  /  in News  /  by admin

Nas performs at Hakkasan. Photos: Al Powers/Powers Imagery LLC Hakkasan at the MGM Grand was home to the official Hudson and Creative Recreation after-party during MAGIC. For the first time in

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

Hakkasan history, the main room of the nightlife mecca was transformed into an open-format destination, welcoming a never-before-seen performance [...]

Click here to view original web page at www.hauteliving.com

AUGUST 27, 2013

## Hakkasan and the big, bigger, biggest

0 Comments  /  in News  /  by admin

Could a 100,000-square-foot nightclub complex eventually land on the Las Vegas Strip? Five years ago, that number would've seemed preposterous. Pure Nightclub sprawled across 36,000 square feet at Caesars Palace and the newly opened XS dominated 40,000 square feet of indoor/outdoor space at Encore. Those were the heavyweights of [...]

Click here to view original web page at lasvegasmagazine.com

of their day. Then came Marquee Nightclub & Dayclub inside The Cosmopolitan on New Year's Eve 2010 and suddenly 62,000 was the number to beat. So what would it take to top out at 100,000 square feet? Probably some combination of nightclub, dayclub and restaurant, although even that trifecta might not be enough. Hakkasan emerged at a staggering 80,000 square feet of nightclub and restaurant sets the bar for sheer size on the Strip. By comparison, Tao, which comprises Tao Asian Bistro, Tao Nightclub and Tao Beach at The Venetian, is "only" 60,000 square feet, and you could play a pretty lengthy game of hide-and-seek in there.

Bigger is becoming the standard, but what will it take build out 100,000

square feet? Probably some combination of nightclub, dayclub and restaurant, although even that trifecta might not be enough.  So, what then? A nightclub/dayclub/restaurant/concert venue? Nightclub/dayclub/restaurant/boutique hotel? What would it take? Only time will tell. And judging by how easy it's been to fill Hakkasan on a good night, even 100,000 might not be big enough.

AUGUST 27, 2013

## TJR Gets Funky in Las Vegas



0 Comments  /  in News  /  by admin

Even your mother has heard of TJR. His track "Funky Vodka" got reworked by Pitbull as "Don't Stop The Party" and became an international hit that gets played everywhere from major league baseball games to high school dances to "Today" show interludes. This summer, the L.A.-based producer [...]

Click here to view original web page at www.billboard.com

(full name T.J. Rozdilsky) has been spending time with another chart-topper, Calvin Harris, who he joins regularly now at Hakkasan Las Vegas for several of Harris's residency dates. "I was a bit intimidated playing at Hakkasan at first because it's so intense," Rozdilsky says of his first time playing with Harris. "I thought it was ladies night 'cause I've never seen so many girls in a club before.  Calvin's pull is quite impressive."

His next visit to Sin City's megalith nightclub is this weekend (August 24), where he'll be armed with his now-standby hits as well as his new tune, "What's Up Suckaz," out now on Chris Lake's Rising Music.

AUGUST 27, 2013

## Where to party in Vegas during Labor Day weekend

0 Comments  /  in News  /  by admin

In Las Vegas, the last days of summer feature some of the best daylife and nightlife action of the year. So what's in store for visitors this Labor Day weekend (Aug. 29 – Sept. 2)? **Hakkasanat at the MGM Grand**—The hot Asian-inspired nightlife mecca has an A-list Labor Day weekend in store for guests. In the club's main room, the turntables will be manned by **Steve Aoki** on Aug. 29, **Hardwell** on Aug. 30 and **Calvin Harris** with **Michael Woods** on Aug. 31. Grammy Award-nominated musician **Moby**, who is releasing his 11th studio album, "Innocents," in October, will perform a special DJ set on Sept. 1. In Hakkasan's laid-back Ling Ling Club, you can also enjoy sounds spun by **Sid Vicious** on Aug. 29, **Ruckus** on Aug. 30 and **DJ Irie** on Aug. 31.

[...]

Click here to view original web page at blog.vegas.com

**Wet Republic** **at MGM Grand**—A lineup of top-tier DJs is ready to provide a Labor Day weekend filled with unparalleled music: **Tommy Trash** and **R3hab** on Aug. 30, **Calvin Harris** on Aug. 31, **Tiësto** with **Bingo Players** on Sept. 1 and **Steve Aoki** on Sept. 2.

AUGUST 23, 2013

## Hakkasan Las Vegas Hosts MAGIC Party with Live Performance by Nas…



0 Comments / in News / by admin

On Tuesday, August 20, celebrated hot spot Hakkasan Las Vegas at MGM Grand Hotel & Casino was home to the official Hudson and Creative Recreation after-party during

HakkasanNightclubVegas | News Archives - HakkasanNightclubVegas

the fashion tradeshow in Las Vegas, MAGIC ( Photo credit: Al Powers of Powers Imagery LLC ).  Photo credit: Al Powers of [...]

<u>Click here to view original web page at www.vegasnews.com</u>

For the first time in Hakkasan history, the main room of the nightlife mecca was transformed into an open-format destination, welcoming a never-before-seen



performance by GRAMMY Award-nominated artist Nas. At 2 am, the rap phenomenon took over the stage and immediately jumped on top of the DJ booth to perform his chart-topping hits including "If I Ruled The World," "Made You Look" and "You Can Hate Me Now." Nas ended his energetic show-stopping performance with an impromptu freestyle inspired by the energy of the night leaving fans wanting more.

Throughout the night, renowned SKAM Artists including DJs Crooked, D-Nice, Fashen, Homicide, Five and Irie took turns manning the decks pumping up the crowd while spinning their hard-hitting tracks for over 5,000 partygoers.

AUGUST 23, 2013

## Star-Studded Evening Brings Kellan Lutz, Henry Cavill and Ryan Lochte to Hakkasan

Nightclub…



0 Comments / in News / by admin

On Sunday, August 18, "Twilight" star
Kellan Lutz , new "Superman: Man of Steel"
hero Henry Cavill and US Olympian Ryan
Lochte , were spotted at the nightclub at
Hakkasan Las Vegas at MGM Grand (Photo
credit: Al Powers of Powers Imagery) .
Kellan Lutz arrived around 1 a.m. [...]

Click here to view original web page at www.vegasnews.com

In town for the MAGIC Convention with his clothing brand Abbot
+Main, Lutz appeared to be in a very mellow, but upbeat mood. The
group was spotted at a VIP booth located on the main stage, sipping
cocktails and beer, seeming to really enjoy themselves and extremely
appreciative of the service and hospitality they received.

Also spotted in the club's Main Room was "Super-hunk" Henry Cavill,
seen drinking and dancing into the night with a group of friends as top-
tier DJ Danny Avila spun his hits to the masses. In addition to the star-
studded evening, world-renowned electronic music sensation Tiësto

stopped by to spend time with his turntable pal Avila in the iconic DJ booth.

1 | 2 |                                                      | Page 1 of 2

**PAGES**

About Us

Artists

Portfolio 3 Columns

Portfolio 4 Columns

Shortcodes

Video

Video Tutorials

VIP Request

VIP Reservations

Welcome!

**CATEGORIES**

News

Uncategorized

**ARCHIVE**

September 2013

August 2013

July 2013

April 2013

December 2010

August 2010

May 2010

March 2010

**INTERESTING LINKS**

Besides are some interesting links for you! Enjoy your stay :)

**PAGES**

About Us

Artists

Portfolio 3 Columns

Portfolio 4 Columns

Shortcodes

Video

Video Tutorials

VIP Request

VIP Reservations

Welcome!

**CATEGORIES**

News

Uncategorized

**ARCHIVE**

September 2013

August 2013

July 2013

April 2013

December 2010

August 2010

May 2010

March 2010

© Copyright - HakkasanNightclubVegas - Design by Kriesi

# Exhibit 5

HakkasanNightclubVegas | VIP Reservations - HakkasanNightclubVegas



Welcome to HakkasanNightclubVegas.com    close

# Hakkasan
## Nightclub Vegas

ARTISTS    VIP RESERVATIONS    NEWS

## VIP Reservations

- Date of Reservation*
  09 / Month  19 / Day  2013 Year

- Name*
  [          ] First name [          ]

- E-mail*
  [          ]

- Mobile #*
  [          ]

- Total number of guests
  [          ]

- Males
  [   ]

- Females
  [   ]

- Service Requested
  ○ Bottle Service  ○ VIP Entry

- Anything we should know?*

HakkasanNightclubVegas | VIP Reservations - HakkasanNightclubVegas

· VIP Request

**INTERESTING LINKS**

Besides are some interesting links for you! Enjoy your stay :)

**PAGES**

About Us

Artists

Portfolio 3 Columns

Portfolio 4 Columns

Shortcodes

Video

Video Tutorials

VIP Request

VIP Reservations

Welcome!

**CATEGORIES**

News

Uncategorized

**ARCHIVE**

September 2013

August 2013

July 2013

April 2013

December 2010

HakkasanNightclubVegas | VIP Reservations - HakkasanNightclubVegas

August 2010

May 2010

March 2010

© Copyright - HakkasanNightclubVegas - Design by Kriest

# EXHIBIT 6



Andrew Rockwell

Home    Find Friends    Laraine

Timeline    About    Photos    Friends    More

## About

To see what he shares with friends, send him a friend request.    [Add Friend]

### Work and Education

**V.I.P. Unltd**
Night Life Impresario · Las Vegas, Nevada · Oct 2007 to present

**VIP UNLTD**
Night Life Impresario · Las Vegas, Nevada · 2007 to present

**Carter-Rockwell Diversified Holdings LLC**
CEO & President · Las Vegas, Nevada · In Mar 2011

**Red Carpet VIP**
VIP Host · Las Vegas, Nevada · Mar 2011 to May 2011

**Prism Nightlife**
Director of Marketing and Promotion · Las Vegas, Nevada · Jul 2009 to Mar 2011

**Angel Management Group**
Promotions & Marketing Manager · Henderson, Nevada · In 2006

**N9NE Group**
Promotions & Marketing Manager · Las Vegas, Nevada

**Asia Nightclub**
Promotions Director · Las Vegas, Nevada

**Youngstown State University**
Marketing · Psychology · Business · Youngstown, Ohio

**Hubbard**
Hubbard, Ohio

### Living

Las Vegas, Nevada
Current City

Youngstown, Ohio
Hometown

### Basic Information

Gender    Male

### Contact Information

Website    http://www.vip-ultd.com
http://www.myspace.com/andrewrockwell01
http://www.myspace.com/vipultd
http://www.prismnightlife.com

[Chat]

See All

**Sponsored**

**Mom Turns '55, Looks**
belleellebeauty.com
Mo
Se
Do
Lit

**Advance as an Educat**
He
his
mc
In
eff

**GET SLIMMER in HOTF**
Ou
yo
in
wo

**Meet Single Seniors**
seniorsmeet.com
No
loc
wo
loc

**Shop Smart, Live Hea**
Wi
th
qu
Use Now ·

# Exhibit 7

Please visit our corporate events website at: http://hakkasanlv.com/corporate-events/ or call 702.853.4342.

## Important Ticketing and Entry Information

- Hakkasan guarantees that all tickets purchased directly from Hakkasan including Ticket Driver are authentic. We do not guarantee the authenticity of tickets purchased from another source unless they are an approved ticketing vendor by Hakkasan.
- Approved ticketing vendors include Wantickets.com and Vegas.com.
- Management Reserves all rights to control entrance into the venue including pre-purchased ticket holders.  Management may refuse entry to any ticket holder as they see fit including, but not limited to, Dress Code violations, intoxicated patrons, unruly patrons, and patrons with illegal substances or carrying out illegal acts.  For seamless entry, please plan accordingly.



## Still Have Questions?

Please call +1 702 891 3838

## Categories

- Blog
- Video Galleries
- Photo Galleries

## Recent Posts

- Quintino at Hakkasan Nightclub November 10thOctober 29, 2013
- Hakkasan Las Vegas Restaurant Presents Specialty Menu in Honor of National Breast Cancer Awareness MonthOctober 28, 2013
- Dada Life – Releases "Born To Rage"October 23, 2013
- NERVO Nation is HERE!October 21, 2013
- I Need R3hab!October 18, 2013

## Contact

# Exhibit 8

| Home | Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services |
|------|-------|-------|-------|-------|-------|-------|

My Data Reports · Commercial Recordings · Licensing

# VIP UNLTD L.L.C.

[ New Search ]      [ Printer Friendly ]      [ Calculate Reinstatement Fees ]

## Business Entity Information

| Status: | Revoked | File Date: | 7/28/2011 |
|---|---|---|---|
| Type: | Domestic Limited-Liability Company | Entity Number: | E0424892011-4 |
| Qualifying State: | NV | List of Officers Due: | 8/31/2011 |
| Managed By: | Managers | Expiration Date: | |
| NV Business ID: | NV20111495198 | Business License Exp: | |

## Registered Agent Information

| Name: | ANDREW ROCKWELL | Address 1: | 2186 E. DESERT INN RD. |
|---|---|---|---|
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89169 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2 | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Officers                              ☐ Include Inactive Officers

**No active officers found for this company**

## Actions\Amendments

Click here to view the 1 action or amendment associated with this company

---

101 N Carson Street Suite 3 Carson City, NV 89701 | (775) 684-5708
© 2010 All Rights Reserved. Privacy Policy and Disclaimer | About This Site

# Exhibit 9

 GreenbergTraurig

In Reply:
Lauri S. Thompson, Esq.
Ph:  (702) 792-3773
Fax:  (702) 792-9002
ThompsonL@gtlaw.com

September 19, 2013

VIA REGISTERED EMAIL: andrewrockwell@gmail.com
        AND  REGISTERED U.S. MAIL

VIP UNLTD, LLC
Mr. Andrew Rockwell
2186 E. Desert Inn Rd.
Las Vegas, NV 89169

RE:    **Hakkasan – Your Domain and Trademark Infringement**
       **<hakkasannightclubvegas.com>**
       Our Reference:  145472.NEW

Dear Mr. Rockwell:

This firm represents Hakkasan LV Limited ("Hakkasan") in connection with various intellectual property matters.  Hakkasan is the owner of the mark HAKKASAN for, among other things, restaurant and bar services (the "HAKKASAN Mark").  In particular, Hakkasan owns United States trademark registration 3,789,248, and pending trademark application no. 85/928057, for night clubs; night club services in the nature of reservation and booking services for the purpose of arranging for admission to night clubs and related services.   A copy of the registration certificate is also attached herewith.

We    have    determined    that    the    domain    name www.hakkasannightclubvegas.com (the "Infringing Domain Name") contains Hakkasan's mark, and is being used to host a page entitled "Hakkasan Nightclub Vegas" with the subtitle "Welcome to HakkasanNightclubVegas.comYour source for the most up to date developments about your favorite Vegas mega-club."  Your page invites users to submit personal information to request bottle service.  This domain name implies affiliation and/or endorsement by the actual Hakkasan nightclub at the MGM Grand in Las Vegas, Nevada.

As a trademark owner, we believe that the use identified herein constitutes an infringement of Hakkasan's rights and amounts to a violation of the Anti-Cybersquatting Consumer Protection Act.  In order to protect its rights, Hakkasan has a duty to monitor and prevent confusingly similar uses of its trademarks in commerce.  Hakkasan believes that your registration and use of domain names incorporating its trademarks together with terms related to the gaming services it

*LV 420006312v1*

GREENBERG TRAURIG, LLP ▪ ATTORNEYS AT LAW ▪ WWW.GTLAW.COM
3773 Howard Hughes Parkway ▪ Suite 400 North ▪ Las Vegas, NV 89169 ▪ Tel 702.792.3773 ▪ Fax 702.792.9002

September 19, 2013
Page 2

provides, have infringed upon Hakkasan's intellectual property rights. We demand that your infringing activities cease immediately.

It is of the utmost importance to our client that the public not be confused about any affiliation between its business activities and the activities of others. Our client would like to resolve this simply by having you take the necessary steps to transfer the above-listed domain names, and any others you might have incorporating the terms Hakkasan to our client. Furthermore, Hakkasan also requires that you remove any reference from anywhere else you may have used the trademarks. We will need your subsequent written confirmation that this has been completed.

We thank you in anticipation of your cooperation and prompt response by tomorrow or by **September 24th 2013**, at the latest. Please do not hesitate to contact me at any time with any questions or concerns related to this matter.

Sincerely,

GT GreenbergTraurig

Lauri S. Thompson

LST/ilh

*LV 420006312v1*

# United States of America

## United States Patent and Trademark Office

# HAKKASAN

**Reg. No. 3,789,248**
**Registered May 18, 2010**
**Int. Cls.: 9, 16 and 43**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

HAKKASAN LIMITED (UNITED KINGDOM LIMITED LIABILITY COMPANY)
151 WARDOUR STREET
4TH FLOOR
LONDON, UNITED KINGDOM W1F8WE

FOR: PUBLICATIONS IN ELECTRONIC FORM, NAMELY, DOWNLOADABLE ELECTRONIC PUBLICATIONS IN THE NATURE OF MAGAZINES AND BOOKS IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS, HOSPITALITY INDUSTRY, MUSIC, SOCIAL EVENTS AND TRAVEL; PRE-RECORDED VIDEOS, CD ROM'S, TAPES, CASSETTES, CDS, DVDS IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS, HOSPITALITY INDUSTRY, MUSIC, SOCIAL EVENTS AND TRAVEL, KITCHEN SCALES, WEIGHING AND MEASURING APPARATUS, NAMELY, MEASURING CUPS AND MEASURING SPOONS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: PUBLICATIONS AND PRINTED MATTER, NAMELY, PAMPHLETS, BROCHURES, NEWSLETTERS, JOURNALS AND MAGAZINES IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS, HOSPITALITY INDUSTRY, MUSIC, SOCIAL EVENTS AND TRAVEL, CALENDARS, PRINTED MENUS, COOKBOOKS; PRINTED INSTRUCTIONAL AND TEACHING MATERIALS IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS, HOSPITALITY INDUSTRY, MUSIC, SOCIAL EVENTS AND TRAVEL, PLASTIC MATERIALS FOR PACKAGING, NAMELY, PLASTIC BAGS FOR PACKAGING; STATIONERY, PAPER, CARDBOARD AND GOODS MADE FROM THESE MATERIALS, NAMELY, COASTERS OF PAPER, PLACE CARDS AND CARDBOARD BOXES, PAPER NAME BADGES, BAGS OF PLASTIC FOR PACKAGING; PAPER BAGS, BOOK MARKS; BOXES OF CARDBOARD OR PAPER; GIFT CARDS, NOTE CARDS, CATALOGUES IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS, HOSPITALITY INDUSTRY, MUSIC, SOCIAL EVENTS AND TRAVEL, FOLDED GREETING CARDS; PAPER GIFT TAGS, GIFT WRAPPING PAPER, NOTEBOOKS; INSTRUCTIONAL MATERIAL (EXCEPT APPARATUS), NAMELY, TEXT-BOOKS IN THE FIELD OF FOOD, FINE DINING, THE CULINARY ARTS AND THE HOSPITALITY INDUSTRY AND PRINTED CHARTS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: RESTAURANT SERVICES; CAFÉ SERVICES; BAR SERVICES; CATERING FOR THE PROVISION OF FOOD AND DRINK; CATERING SERVICES; PROVISION OF FOOD AND DRINK BY A RESTAURANT, IN CLASS 43 (U.S. CLS. 100 AND 101).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF ERPN CMNTY TM OFC REG. NO. 4151916, DATED 12-2-2005, EXPIRES 12-1-2014.

THE WORDING "HAKKASAN" HAS NO MEANING IN A FOREIGN LANGUAGE.



*David J. Kappos*

Director of the United States Patent and Trademark Office

**Reg. No. 3,789,248** SER. NO. 77-616,093, FILED 11-17-2008.

JERI J. FICKES, EXAMINING ATTORNEY