UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HAKKASAN LV, LLC, *et al.*, | Case No. 2:13-cv-01999-JCM-NJK |
| Plaintiffs, | ORDER |
| v. | |
| VIP, UNLTD, LLC, *et al.*, | |
| Defendants. | |

Presently before the court is a motion for summary judgment filed by Hakkasan LV, LLC and Hakkasan Limited (hereinafter "plaintiffs"). (Doc. # 35). To date, defendant Andrew Rockwell (hereinafter "defendant") has not responded to plaintiffs' motion for summary judgment.

Also before the court is plaintiffs' motion for partial summary judgment on the issue that defendant Rockwell is personally liable for the judgment entered against VIP, a sole proprietorship. (Doc. # 34). To date, defendant has not responded to plaintiffs' motion for partial summary judgment.

**I.      Background**

This case involves claims for cybersquatting, trademark infringement, counterfeiting, unfair competition, and copyright infringement under federal statutes. Along with the federal claims, plaintiffs have also alleged pendent claims for common law trademark infringement, state deceptive trade practices, fraud, and intentional interference with prospective economic advantage.

Hakkasan is a famous restaurant and nightlife venue with multiple locations around the world. Hakkasan owns the mark, HAKKASAN, in connection with restaurant, bar, and nightclub services. Hakkasan owns a federal trademark registration (U.S. Reg. No. 3,789,248) for bar and

restaurant services and a trademark registration (U.S. Reg. No. 4,458,604) for nightclubs and nightclub services, such as reservations and booking.

Hakkasan opened its first location in 2001, its first location in the United States in 2009, and its Las Vegas location in 2012. Plaintiffs have used the HAKKASAN marks in connection with advertising and promoting its restaurant and nightclub services around the world since 2001. Plaintiffs have spent millions of dollars to advertise and promote the HAKKASAN marks in print, broadcast media, and on the internet through their website.

Based on its federal trademark registrations and extensive use, Hakkasan owns the exclusive right to use its HAKKASAN marks in connection with restaurant, bar, and nightclub services. The uniqueness of Hakkasan, along with the extensive advertising and promotion, has resulted in the global distinctiveness of the HAKKASAN name and marks.

Defendants registered the domain name <www.hakkasanclublasvegas.com>, created a website linked to the name, and claimed to be "your source for the most up to date developments about your favorite Vegas mega-club." The website contained plaintiffs' federally registered trademark and logo, together with images and other materials stolen directly from plaintiffs' own website.

On the website, defendants claimed they were authorized to offer services to the public on behalf of Hakkasan. Defendants knowingly and willfully offered and sold counterfeit services, including access to the nightclub, VIP bottle services, and event services. Plaintiffs did not license or approve of defendants' use of the HAKKASAN marks in any way, nor did plaintiffs approve of defendants' sale of the services on his website in false association with the HAKKASAN marks.

On October 30, 2013, plaintiffs filed this action against defendants seeking an injunction and damages arising out of defendants' use of plaintiffs' trademarks and copyrights. After defendants were served with the summons and first amended complaint on January 2, 2014, defendant VIP failed to respond within the required time. The clerk of court then entered default against VIP on all claims set forth in plaintiffs' complaint. Plaintiffs subsequently filed a motion for default judgment and permanent injunction against VIP, which this court granted on June 12, 2014.

Plaintiffs now request that the court enter summary judgment against defendant Rockwell. Plaintiffs also request a permanent injunction against defendant Rockwell, to prevent future infringement, and for all of the rights in the <www.hakkasanclubvegas.com> domain name to be transferred to plaintiffs.[1]

**II.   Legal Standard**

Pursuant to Local Rule 7-2(d), an opposing party's failure to file a timely response to any motion constitutes the party's consent to the granting of the motion and is proper grounds for dismissal. LR 7-2(d). A court cannot, however, grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition).

Even without an opposition, the court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950; *see also Clarendon Am. Ins. Co. v. Jai Thai Enters., LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash. 2009).[2]

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

---

[1] Pursuant to a prior court order, (doc. # 32), the rights to the <www.hakkasannightclubvegas.com> domain name have already been unlocked and permanently transferred to plaintiffs. Accordingly, the present order will consider only the requests for summary judgment and a permanent injunction against defendant Rockwell.

[2] "[S]ummary judgment cannot be granted by default, even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56, 2010 cmt. to subdivision (e). The court may only grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

3

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**III.   Discussion**

For summary judgment to be appropriate, plaintiffs must prove that they showed all essential elements of the claims. If plaintiffs succeed in this, the burden would then shift to defendant to show that a genuine dispute of material fact exists. Because defendant failed to respond to plaintiffs' motion, the court must evaluate the evidence to determine whether the

4

standard has been satisfied.

### A. Anti-Cybersquatting Consumer Protection Act

The Anti-Cybersquatting Protection Act ("ACPA") provides that:

> A person shall be liable in a civil action by the owner of a mark…if without regard to the goods or services of the parties, that person --
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that --
>
> 1. in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> 2. in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A).

Defendant is liable under the ACPA if he had a bad faith intent to profit from using a famous mark as a domain name. Defendant registered the domain name with no right to the HAKKASAN marks. This indicates defendant's bad faith intent to traffic and profit from the domain name.

Pursuant to the ACPA, courts must look to a number of factors to determine if defendant had a bad faith intent. These factors include the person's prior use of the domain name, whether the domain name contains any of the person's legal names, the extent to which the mark is distinctive or famous, and the trademark or other intellectual property rights of the person.

Defendants have no trademark right in the registered domain name. Further, the domain name does not contain any of defendant's legal names. Defendant used an identical or confusingly similar mark to plaintiffs' famous trademarks in the domain name for his infringing site. These factors show that defendant intended to divert consumers from plaintiffs' website and create confusion about the source. Plaintiffs have provided facts to support that defendant had a bad faith intent to profit from the HAKKASAN marks.

Plaintiffs' HAKKASAN marks are famous and entitled to protection. The marks are arbitrary trademarks because they do not suggest the goods and services offered. *See Entrepreneurs Media Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). Further, the marks are

suggestive because they require imagination to link the marks with the goods or services. *See Interstellar Starship Svcs. Ltd. v. Epix, Inc.*, 304 F.3d 936 (9th Cir. 2002). Arbitrary and suggestive trademarks receive protection because of their distinctiveness. *Id.*

Plaintiffs also satisfy the second element under the ACPA. The domain name registered by defendant is identical or confusingly similar to the HAKKASAN trademark. In fact, the infringing domain name encompasses the entirety of the HAKKASAN marks.

Overall, plaintiffs have provided facts to support all of the elements of a claim under the ACPA. Defendant failed to respond and show that a genuine issue of material fact exists. Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to the cybersquatting claim under 15 U.S.C. 1125(d).

    *B.*    *Trademark infringement*

To succeed on the merits of the trademark infringement and unfair competition claims under the Lanham Act, plaintiffs must establish that defendant's use of plaintiffs' marks caused a likelihood of confusion among the consumers. *See* 15 U.S.C. § 1114(a); *Metro Publ'g Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993). Confusion can occur solely by registering an infringing domain name.

By using plaintiffs' name and marks to provide links to a website entitled "Hakkasan Las Vegas Night Club" and offering the same types of goods and services as plaintiffs, defendant intended to deceive the public. This creates the presumption of confusion. *See Acad. of Motion Pictures Arts and Sci. v. Creative House Promotions*, 944 F.2d 1446, 1456 (9th Cir. 1991) ("Where evidence shows that one company deliberately adopted another's name to obtain advantage from the other's good will, we may infer a likelihood of confusion").

Even without the presumption of confusion, plaintiffs demonstrate that there is a likelihood of confusion between their HAKKASAN marks and defendant's use of the marks on his website. The Ninth Circuit has found that in the context of the internet, three factors need to be addressed: (1) the similarity of the marks; (2) the relatedness of the goods or services; and (3) the simultaneous use of the web, as a marketing channel. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).

Since defendant intended to deceive the public, the court finds the presumption of confusion. However, even without the presumption of confusion, plaintiffs succeed on the merits of their trademark infringement claim. Defendant used a mark identical to plaintiffs' HAKKASAN marks in order to deceive the consumers. The goods and services in connection with defendant's infringing domain name were related, if not identical, to those provided by plaintiffs. Both plaintiffs and defendant used the internet to advertise the services offered under the HAKKASAN marks, thus, the use of the web, as a marketing channel, was simultaneous.

Overall, plaintiffs have provided facts to support all of the elements of a claim for trademark infringement. Defendant failed to respond and show that a genuine issue of material fact exists. Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to their trademark infringement claim.

C. *Unfair competition*

Pursuant to the Lanham Act, 15 U.S.C. § 1125(a), a claim for unfair competition exists when:

> (1) Any person…in connection with any goods or services…uses in commerce any word…symbol…or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion…mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

Defendant used the HAKKASAN name and marks in a false and misleading manner. He misrepresented to the public that he was affiliated with, connected to, or associated with plaintiffs' HAKKASAN brand. Defendant intended to confuse and deceive the public in order to profit.

Overall, plaintiffs have provided facts to support the elements of a claim for unfair competition under 15 U.S.C. § 1125(a). Defendant failed to respond and show that a genuine issue of material fact exists. Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to this claim.

///

///

*D.     Counterfeiting*

A "counterfeit" is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.  15 U.S.C. § 1127.  Defendant used counterfeit HAKKASAN marks on the sale of nightclub tickets and other related goods and services without plaintiffs' consent.

As previously discussed, plaintiffs have established the likelihood of confusion between their HAKKASAN marks and the mark used by defendant.  Plaintiffs HAKKASAN marks were protected and defendant was unauthorized to use them.  Plaintiffs have provided facts to support their counterfeiting claim.  Defendant failed to respond and show that a genuine issue of material fact exists.  Plaintiffs are entitled to summary judgment as to the counterfeiting claim.

*E.     Copyright infringement*

Plaintiffs must satisfy two requirements to show copyright infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the defendant violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. 17 U.S.C. § 501; *see A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Under the Copyright Act, 17 U.S.C. § 501, infringement is willful if defendant acts with knowledge that he or she is infringing a copyright.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990).

The court finds that plaintiffs have sufficiently shown ownership of the HAKKASAN marks.  The court further finds that defendant violated plaintiffs' exclusive rights granted to copyright holders.  Defendant acted with knowledge that he was infringing a copyright.  Defendant disregarded plaintiffs' intellectual property rights and willfully infringed plaintiffs' copyrights.

Plaintiffs have provided facts to support both elements of copyright infringement. Defendant failed to respond and show that a genuine issue of material fact exists.  Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to this claim.

*F.     Common law trademark infringement*

In order to show common law trademark infringement, plaintiffs need only prove two elements.  *See A.L.M.N., Inc. v. Rosoff*, 104 Nev. 274, 277 (1988).  First, plaintiffs must show that they own a protectable right in the marks.  *Id.*  Second, they must show that defendant's registration

of the infringing domain name is likely to "confuse, cause mistake or deceive an 'appreciable number' of reasonable customers" with respect to the marks. *Id.*

Plaintiffs' marks are federally registered. Further, plaintiffs have been in continuous and exclusive use of the marks prior to opening their Hakkasan location in Las Vegas. Defendant's use of the infringing domain name, the HAKKASAN name, marks, and logo are likely to "confuse, cause mistake or deceive an 'appreciable number' of reasonable customers" with respect to the marks. *Id.*

The Nevada Supreme Court has adopted a seven factor test to determine the likelihood of confusion between similar marks. These factors include the: (1) similarity of marks; (2) similarity of services; (3) marketing channels used; (4) evidence of actual confusion; (5) strength of the mark; (6) junior user's intent in adopting the mark; and (7) degree of care likely to be exercised by the purchaser. *Id.* at 282.

These factors were discussed in detail above. It is likely defendant's use of the marks could cause confusion. Overall, plaintiffs have provided facts to support all of the elements of a claim for common law trademark infringement. Defendant failed to respond and show that a genuine issue of material fact exists. Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to this claim.

  G.  *State deceptive trade practices*

Pursuant to NRS 598.0915, a person engages in a deceptive trade practice if, in the course of his business, he knowingly:

> (1) Passes off goods or services for sale or lease as those of another person; (2) Makes a false representation as to the source, sponsorship, approval, or certification of goods or services for sale or lease; (3) Makes a false representation as to affiliation, connection, association with or certification by another person…; (6) Represents that goods or services for sale or lease are of a particular standard, quality or grade. NRS 598.0915.

Defendant passed off his VIP services under the HAKKASAN marks. Further, defendant falsely claimed to consumers that plaintiffs authorized him to use the marks. Defendant used the famous HAKKASAN name and logo and claimed that it was in affiliation, connection, and association with plaintiffs. However, plaintiffs have shown that no such relationship exists.

9

1  Defendant intentionally misrepresented his business to deceive the public into purchasing
2  unauthorized tickets to Hakkasan from him.  Defendant profited from this practice.

Plaintiffs have proven their deceptive trade practices claim under Nevada law.  Defendant failed to respond and show that a genuine issue of material fact exists.  Accordingly the court finds that plaintiffs are entitled to summary judgment as to this claim.

*H.     Fraud*

A plaintiff has the burden of proving the elements of fraud by clear and convincing evidence.  *Lubbe v. Barba*, 91 Nev. 596, 598 (1975). The elements of fraud are:

> (1)   A false representation made by the defendant; (2) Defendant's knowledge or belief that the representation is false; (3) Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) Plaintiff's justifiable reliance upon the misrepresentation; and (5) Damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, (1992).

Defendant falsely represented himself as an agent of Hakkasan and identified himself to the public as authorized to sell tickets to Hakkasan.  Further, defendant had knowledge that these representations were false.  Defendant intended to induce plaintiffs into accepting his unauthorized tickets from patrons when they showed up at Hakkasan.  Defendant profited from these misrepresentations. Plaintiffs were placed in the situation to either accept the tickets, without pay, or dissatisfy their customers.  By accepting defendant's tickets, plaintiffs lost revenue.

Overall, plaintiffs have provided facts to support the elements of fraud by clear and convincing evidence.  Defendant failed to respond and show that a genuine issue of material fact exists.  Accordingly, the court finds that plaintiffs have satisfied the standard for summary judgment as to their common law fraud claim.

*I.     Intentional interference with prospective economic advantage*

In Nevada, intentional interference with prospective economic advantage requires five elements to be met.  *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (1987).  First, a prospective contractual relationship must exist or have existed between the plaintiff and a third party.  *Id.*  Second, defendant must have knowledge of this relationship.  *Id.*  Third, defendant must have intended to harm plaintiff by preventing this relationship.  *Id.*  Next, defendant must have had no

privilege or justification. *Id.* Finally, defendant's conduct must have resulted in actual harm to plaintiff. *Id.*

Plaintiffs enter into contracts with patrons by selling tickets to them and providing them with services at Hakkasan. Therefore, a contractual relationship exists between plaintiffs and a third party. It is clear from defendant's business plan and website that he has knowledge of this relationship between plaintiffs and their customers. Plaintiffs make money by selling entry tickets and VIP services to patrons.

Defendant intended to harm plaintiffs by hindering them from selling tickets to their customers, offering his own tickets, and profiting from doing so. Because of defendant's conduct, plaintiffs lost revenue from the tickets and services they could have sold. Plaintiffs were also placed in the situation of deciding whether to honor the unauthorized tickets and lose revenue or refuse the tickets and damage the HAKKASAN brand and reputation.

Plaintiffs have proven their intentional interference with prospective economic advantage claim under Nevada law. Defendant failed to respond and show that a genuine issue of material fact exists. Accordingly the court finds that plaintiffs are entitled to summary judgment as to this claim.

  J.  *Plaintiffs' motion for partial summary judgment*

On October 14, 2014, the court ordered that defendant show cause as to why plaintiffs' motion for partial summary judgment should not be granted. (Doc. # 39). The court ordered that "[d]efendant shall file any documentation in opposition to [p]laintiffs' motion within one week from the date of this order." (Doc. # 39).

Defendant has once again failed to respond and show why plaintiffs' motion should not be granted. Accordingly, the court will grant the motion.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for summary judgment, (doc. # 35), be, and the same hereby is, GRANTED.

/ / /

IT IS FURTHER ORDERED that defendant Andrew Rockwell is permanently enjoined (1) from using plaintiffs' trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases, or designs, in commerce or in connection with any business or for any other purpose (including, but not limited to, on web sites and in domain names); and (2) from registering, owning, leasing, selling, or trafficking in any domain name containing plaintiffs' trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases, or designs.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment, (doc. # 34), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the clerk of the court enter judgment in favor of plaintiffs and close the case.

DATED THIS 27th day of October 2014.

*James C. Mahan*
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE